J^SHORTESS, Judge.
Capital Bank & Trust Company in Baton Rouge became insolvent in 1987, and the Federal Deposit Insurance Corporation (FDIC) acquired its commercial paper. Dennis Joslin (plaintiff) buys discounted commercial paper. In 1993 he bought a bundle of Capital’s notes and mortgages from the FDIC. Among those documents were two promissory notes executed in 1986 by Bengal Chef, Inc., to Capital Bank. One note was for $14,000.00; the other was for $102,605.92.
*1268 Plaintiff sued to collect the notes. He originally named as defendants Bengal and the six people listed on the back of the note as guarantors. Ten months after he filed suit, he amended the petition and added four defendants, among them James M. Field and John S. Kean, III, based on continuing guaranties found in the former Capital Bank files. The guaranties sued upon were a $20,000.00 guaranty dated June 25, 1974, a $44,000.00 undated guaranty, and an undated guaranty for a blank amount.
Plaintiff contends 12 USC § 1283(e) and the doctrine set forth by the United States Supreme Court in D’Oench, Duhme & Co. v. Federal Deposit Insurance Corporation [1] protect him from virtually any defenses Field and Kean might raise. That doctrine bars defenses or claims against assets acquired by the FDIC based on oral or secret agreements between the financial institution and the borrower that alter or condition the terms of existing unqualified obligations. Field and Kean contend section 1283(e) and D’Oench, Duhme do not apply because they had been released from those guaranties in 1980, long before the FDIC acquired Capital’s assets.
After a bench trial on the liability of Field and Kean, the trial court made a factual finding that Capital had released them as guarantors. It dismissed plaintiffs suit. Plaintiffs motion for new trial was denied. The trial court noted plaintiff gambled when he bought discounted paper and lost his bet when he failed to prove by a preponderance of the evidence that Field and Kean remained as guarantors. Plaintiff appeals.
IsPlaintiff contends the trial court erred in looking beyond the four corners of the continuing-guaranty agreements. He contends the documents are clear and unambiguous on their faces, and thus the court should not have resorted to extrinsic evidence. He also contends the trial court violated the principles of the D’Oench, Duhme doctrine and section 1283(e) in considering testimony regarding an agreement not shown within Capital’s records.
The issue before the trial court was not a simple interpretation of the continuing-guaranty contracts. Instead, the court was asked to answer a factual question, i.e., whether the guaranties existed in 1987 when the FDIC acquired Capital’s assets.[2] The court did not err in going beyond the four corners of the documents to resolve this factual issue. Furthermore, as our discussion of the evidence will show, the court did not violate federal principles, as Capital’s records show the existence of the release.
Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO.[3] If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Sistler v. Liberty Mutual Ins. Co.[4] We must therefore review the entire record and determine whether the trial court’s findings were reasonable in light of the evidence presented.
FACTUAL BACKGROUND
In 1973 Field, Kean, and Wesley Turner bought an interest in Bengal. They endorsed the company’s initial notes and signed continuing guaranties. Field testified he signed the undated guaranties sometime before 1976. In 1976 he and Kean sold their interest in Bengal, but they remained as guarantors until Bengal became more creditworthy. The reverse side of every Bengal note before 1980 indicated it was secured by the pledge of continuing guaranties of Field and Kean.
In 1980 Bengal obtained a line of credit based on the credit of the four Bengal stockholders at that time, Turner, Jerome B. Hopkins, C.M. Smith, and E.N. Smith. A letter from Capital to Turner of April 1980 advised *1269 Turner the line of 14credit was approved conditioned on Capital’s receipt of the continuing guaranties of those stockholders. Turner asked Capital to release Field and Kean as guarantors. Allie R. Pogue, Capital’s executive vice-president in charge of commercial loans, testified he went before the executive committee' and the board of directors and asked that Field and Kean be released. The committee and board both agreed, but the release was never recorded in the minutes of either. Despite the lack of recordation, no one disputes the release was orally granted. Turner wrote Capital’s loan officer thanking him for his work on establishing the line of credit and releasing Field and Kean. And the reverse side of every Bengal note after 1980 lists the four stockholders as guarantors but does not list Field and Kean.
DOCUMENTATION IN BANK RECORDS
Plaintiff contends the trial court erred in failing to observe the principles of the D’Oench, Duhme doctrine. That doctrine does not apply to every inquiry concerning an asset. One widely-recognized exception is when the parties contend no asset existed or an asset became invalid before the FDIC acquired the bank’s assets. This exception can be applied, however, only when the agreement is reflected in the official records of the bank.[5]
The D’Oench, Duhme doctrine is based on a federal policy to protect public funds against misrepresentations as to the securities or other assets in the portfolios of the banks the FDIC insures.[6] The test is whether the security would have the tendency to deceive the creditors or the FDIC.[7] Plaintiff contends there is a lack of documentation in Capital’s records showing the release of Field and Kean, and thus a reasonable bank examiner would have been misled into believing their guaranties secured the Bengal notes. We disagree.
Colleen Walsh was employed by Capital from 1980 to 1985. She worked closely with bank examiners from the FDIC and the Louisiana Office of Financial Institutions. She testified the bank examiners looked at the loan applications and then compared the collateral listed on the loan application and on the back of the notes to the collateral held by the bank to ensure they matched. Pledges of the |scontinuing guaranties of Field and Kean are not listed as collateral on any of Bengal’s loan applications after 1980. Thus, a reasonable bank examiner would not have been misled into believing their guaranties secured those loans.
Walsh further testified Capital’s collateral department was not set up to return collateral once it was released. The bank kept all its collateral in one big file and tended to “never g[et] rid of anything.” But the bank examiners did not go through the collateral file if they were satisfied that the collateral listed on the loan applications matched the collateral held by the bank.
Walsh also prepared for the FDIC a running list of all transactions in which bank directors were involved, whether directly or indirectly. During her tenure with Capital, Bengal was never listed as a business in which Field was involved, and Capital was never cited by the FDIC for failing to include it. She stated this was because Field had been released before she came to work for Capital in 1980.
The bank records also indirectly reflect Field’s release in its board-of-directors’meeting minutes. Bank policy and FDIC rules prohibited an insider, i.e., a board member involved in a transaction, from voting on that transaction. Board minutes through 1979 reflect that Field left the room whenever Bengal’s transactions were discussed. After the release, however, Field remained and voted on Bengal’s transactions. Pogue testified that had the release not been approved, Field would have continued to be treated as an insider on all Bengal’s matters. *1270 The witnesses agreed that Capital was meticulous about adherence to inside-transaction rules.
Based on our review of the evidence in the record, we find the release was adequately reflected in the official records of the bank so that a reasonable bank examiner would not have been deceived by the Field and Kean guaranties in the Capital collateral file. The notes and loan applications properly identified the collateral securing the posW.980 Bengal loans, and thus there was little avenue for confusion. Field noted in his testimony that when the FDIC created a bridge bank, and later when it took over the bank, it made demand only on the guarantors shown on the note, and not on Kean or himself.
^CONCLUSION
Because the official bank records adequately reflected the release of Field and Kean, they can avail themselves of the no-asset exception to the D’Oench, Duhme doctrine. The trial court made a factual finding that Field and Kean were released from their guaranties before the FDIC acquired Capital’s assets. We find no manifest error in that finding. Just as the FDIC could not acquire dead assets, plaintiff, the FDIC’s successor in interest, cannot enforce them. Thus, the judgment of the trial court dismissing plaintiff’s suit is correct. We affirm the trial court’s judgment at plaintiffs cost.
AFFIRMED.

. 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

. See Bank One Texas National Ass'n v. Morrison, 26 F.3d 544, 548 (5th Cir.1994); Preston Farm & Ranch Supply v. Bio-Zyme Enter., 625 S.W.2d 295, 298 (Tex.1981).

. 549 So.2d 840, 844 (La. 1989).

. 558 So.2d 1106, 1112 (La.1990).

. Federal Deposit Ins. Corp. v. McFarland, 33 F.3d 532, 537-538 (5th Cir.1994).

. D'Oench, Duhme, 315 U.S. at 457, 62 S.Ct. at 679.

.Id., 315 U.S. at 460, 62 S.Ct. at 681.